UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| JESSICA GOSSE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV424-278 |
| WELLSTAR MCG HEALTH, et al., | ) ) ) | |
| Defendants. | ) | |

**JOSEPH D. LENTO'S RESPONSE**

<u>**TO THE COURT'S JULY 11, 2025 ORDER TO SHOW CAUSE**</u>

JOSEPH D. LENTO, subject to all statutes pertaining to perjury and making false statements, respectfully submits this document in response to the Honorable Court's July 11, 2025 Order to Show Cause:

1. I am an attorney licensed to practice law in the States of New Jersey and New York. At times relevant to these events, I was also licensed to practice in Pennsylvania.

2. Although my name is in the firm's current name, I am actually an employee of Lento Law Group, PC (Firm), but also one of several owners.

3. My primary duties within the Firm at times relevant to these events were to, for example, assist with the administration of new client initial consultations, establish fees for new clients, address unpaid fees with clients, and oversee the general financial and business aspects of the Firm.

1

4. I am usually not involved in the day-to-day administration of the Firm, but have a Firm Administrator and other administrative personnel responsible for those matters.

5. I do not personally handle case files, but am available should a Managing Attorney or another Firm attorney seek my input into a file.

6. Our Firm legal organization is that there are several Managing Attorneys. The Managing Attorneys oversee cases within specific offices and/or geographic regions and/or other cases the Firm's Administrator may assign to them.

7. The Firm also has several other attorneys, most of whom are under the supervision and oversight of a Managing Attorney.

8. Dr. Gosse had her most recent consultation in May 2024. The consultation was not provided by me, but by our Firm Administrator John Groff, and a managing attorney no longer employed by the Firm. This was Dr. Gosse's second consultation. The first occurred in November 2022, however, Dr. Gosse chose not to hire the firm at that time.

9. Per standard Lento Law Firm protocol, as part of the consultation process in 2022 and again in 2024, Dr. Gosse was sent, signed, and returned a consultation engagement letter. The letter specified that I was only a member of the Pennsylvania, New Jersey, and New York bar. It also specified that other lawyers in the firm were barred in other states and pro hoc vice admission would be sought "as applicable." (See below copy of letterhead found at Attachment "B" emailed to Dr. Gosse in April 2024.)[1]

---

[1] The Lento Law Firm is a distinct entity from the Lento Law Group. Technically, Dr. Gosse engaged the Lento Law Firm, LLC for a consultation in 2022 and 2024, and Dr. Gosse engaged the Lento Law Group, P.C., for the engagement involving litigation against her former residency program. "Firm" largely refers to the "Lento Law Group, P.C" for purposes herein.



10. Dr. Gosse engaged the Lento Law Group by signing an Engagement Letter on May 31, 2024. (Attachment "A")

11. The Letter specifically explains: "During the initial team review after engagement and/or at an applicable point in time as determined by the Firm, *the team will determine as to which advisor or attorney will work with a client* and we will follow up accordingly with a client regarding the assigned point of contact who will be taking the role of lead on your case and to whom communications moving forward should be directed." (Attachment "A" at 3)

12. In May 2024, Terrill Ratliff, Esquire, was the Firm's overall Managing Attorney; he was also responsible for Pennsylvania and New Jersey. In this capacity, he was both Managing Attorney for the nationwide firm, as well as for the New Jersey and Pennsylvania cases.

13. The *Gosse* file was assigned to Mr. Ratliff, as case manager, with Kyle Adams, Esquire having day-to-day responsibility over the file. Mr. Adams focused on employment law.

14. When speaking to any client during an initial consultation, I do not and never have represented that I am a member of the bar of any state or federal court where I am not barred.

15. Specifically, I have never represented myself to be a member of the bar of the State of Georgia or any Georgia federal district court.

16. Mr. Groff and others who provide initial consultations are specifically instructed to not represent that I am a member of the bar of any state or federal court where I am not barred. The same instruction applies to representations about any other Firm lawyer.

17. When speaking to clients during the initial consultation, I do not and never have informed a client that we have attorneys licensed in any jurisdiction unless the Firm actually does have an attorney licensed in that jurisdiction at that time.

18. Where applicable, clients are informed that when we do not have an attorney barred in a particular state or court we obtain local counsel and request that he or she enter their appearance and then seek the pro hoc admission of one of the Firm other attorneys.

19. In some circumstances, when we have a Firm attorney barred in a particular state, we have that attorney enter their appearance, file necessary documents, and then seek the pro hoc admission of the Firm attorney with primary responsibility over the file.

20. Overseeing and supervising this process is left to the Managing Attorney. However, I do provide input when requested.

21. At times relevant to the events in this Order to Show Cause, Melissa S. Renza, Esquire, was employed as an attorney by the Firm and was a member of the State of Georgia bar and this Honorable District Court's bar.

22. Ms. Renza was designated per her employment with the Firm as the Firm's Managing Attorney for the Florida and Georgia offices and responsible for said offices.

23. Based on the above procedures, Ms. Renza was asked to file the lawsuit in this District Court, which Mr. Adams had drafted after working directly with Dr. Gosse and who would

thereafter apply to the Court for pro hac vice admission. She did so on December 12, 2024. (Dkt. 1) Shortly thereafter, Ms. Renza unexpectedly left the Firm.[2]

24. Unfortunately, Mr. Adams did not follow through with filing for pro hoc admission, and the paralegal did not follow through with service of the Summonses.

25. Mr. Adams abruptly left the Firm a week later, December 20, 2024, but informed the Firm that he would continue to work on his cases on an independent contractor basis. Several weeks later Mr. Adams chose to completely remove himself from the Firm. Needless to say, he did not apply for pro hac vice admission.

26. Throughout December 2024 to February 2025, the Firm underwent a significant and exceptionally disruptive change in personnel. Managing Attorney for the Firm Terrill Ratliff resigned to start his own law firm. Samuel Jackson, Esquire, a senior litigator with the Firm, abruptly left to join Mr. Ratliff as a partner in the new law firm. Other attorneys also left the Firm to become associated with them.

27. An approximate minimum of 14 attorneys and five administrative employees departed the Firm, many without any notice whatsoever, within a period of several months.

28. A new Managing Attorney, Sal Rae, Esquire, was hired to replace Terrell Ratliff, Esquire, in January 2025 and remained until May 2025. As with Mr. Ratliff, Mr. Raie was designated the Firm's overall Managing Attorney; he was also responsible for Pennsylvania and New Jersey.

29. The *Gosse* case came under his oversight during that period.

---

[2] The specifics of Ms. Renza's grievances with the Firm, and the Firm's with her, are not germane to the issues in the Order to Show Cause.

30. This significant change in personnel, including two Managing Attorneys and administrative personnel, created an administrative nightmare. Hundreds of files needed to be reviewed, hundreds of files needed to be reassigned, attorneys needed to get up to speed on files (several of them already in suit) they had never seen, emails of the attorneys who left had to be monitored, etc.

31. Unfortunately, Mr. Raie misstated or misunderstood (at best) or misrepresented (at worst) his skills, abilities, and willingness to assist in addressing the firm's challenges during this time period.

32. Mr. Raie was aware of the *Gosse* case by no later than February 4, 2025, as he was included on emails from me sent in an effort to bring cases of note, concern, etc., to applicable Firm attorneys and personnel so that appropriate action could be taken. Mr. Raie was copied on multiple emails referenced in Paragraph 34 below. Mr. Raie was aware of this Honorable Court's April 29, 2025, orders as he forwarded to Firm personnel on April 30, 2025.

33. In an effort to support Firm attorneys and personnel, I attempted to assist in this administrative and staffing nightmare. On January 26, 2025, I emailed administrative personnel about the need to have the *Gosse* file assigned to a new lawyer as her prior lawyer had left the firm. (Exhibit "D")

34. *See also*, the following emails on the same subject: January 17 and 18, 2025 (Attachment "F"); February 1, 2025 (Attachment "G"); February 20, 2025 (Attachment "C"); February 3, 2025 (Attachment "J"); February 5, 2025 (Attachment "K"); February 12, 2025 (Attachment "E"); February 2, 2025 (Attachment "L"); May 13, 2025 (Attachment "M").

35. On February 20, 2025, I engaged in an email thread with Dr. Gosse, explained the abrupt departure of Mr. Adams, and that we were working to address the problem caused by his departure. (Attachment "G")

36. On May 20, 2025, I continued to request our Firm Administrator work with Ms. Renza to resolve the problems with the case. (Attachment "I")

37. Despite vigorous efforts, the Firm was unable to locate an attorney barred in this District, or in Georgia generally, who would act as our local counsel and/or assume responsibility for the action.

38. Therefore, on May 20, 2025, I sought the assistance of Michael Farhi, Esquire. Mr. Farhi has attorney contacts in various states in the the United States.

39. Our Firm Administrator had contacted Mr. Farhi earlier in May 2025 to address Dr. Gosse's case and the need to move the case forward.

40. Over the course of the ensuing weeks, Mr. Farhi explored the details of the case, spoke with Ms. Renza and others about the case, and contacted potential local counsel in Georgia. Mr. Farhi and I communicated frequently during this period. He kept me updated on his vigorous, but unsuccessful, efforts to locate a Georgia local counsel who would enter their appearance on the Firm's and Dr. Gosse's behalf.

41. The Firm, and I, through the Firm's administrative personnel, and through our communications with Mr. Farhi, have been searching for a new Georgia counsel to act as our local counsel, or assume representation of Dr. Gosse, since early 2025. We have not been able to do so.

42. Mr. Farhi is not licensed in Georgia or this District. Therefore, he had to decline assisting in the case. However, he did not abandon his efforts to help us locate a Georgia local

counsel. It is my understanding that within the past week he spoke to another potential local counsel who was unable to assist us.

43. After reviewing the Order to Show Cause, Mr. Farhi contacted the Court's appointed counsel, who represented that they are now representing Dr. Gosse.

44. I have been actively involved in attempting to resolve the problems caused by the departure of Ms. Renza and Mr. Adams, and then exacerbated by the departure of the other attorneys and administrative personnel, since January 2025. This not only included using our Firm's resources, but also reaching out to Mr. Farhi for his assistance. Unfortunately, none of our efforts have been able to find a Georgia attorney willing to serve as our local counsel or associate with our Firm in the *Gosse* case.

45. The Firm was unaware of the full extent of the problems with *Gosse*, and the multiple failures to comply with this Court's orders, until it received July 11, 2025 Order to Show Cause.

46. The Firm, and I, are prepared to return Dr. Gosse's entire $15,000.00 pre-paid expenses in light of the circumstances created by the significant and exceptionally disruptive change in personnel the Firm underwent in late 2024 into February 2025.

47. A review of the docket demonstrates that neither I nor any other Firm attorney, not barred in Georgia or this District, engaged with this Honorable Court. The only Firm lawyer who filed or otherwise engaged in this District was Ms. Renza, who is barred in this District.

48. The Firm had what it understood to be an effective and appropriate plan in having an experienced employment attorney, Kyle Adams, representing Dr. Gosse, with, upon her employ, the Firm's Managing Attorney Melissa Renza to file and prosecute the case in this Honorable Court where she is licensed. This plan regrettably could not be executed upon Mr. Adams' and Ms.

Renza's unexpected departures from the firm at roughly the same time. Constructive efforts to address Dr. Gosse's case regrettably faced obstacles in large part due to the administrative and staffing challenges which ensued from these two attorneys' departures in addition to the approximately 14 total attorneys who departed from the Firm during the past approximate year or so.

49. While I recognize the problems caused to this Honorable Court, and to Dr. Gosse, they were not a result of any disrespect for the Court or Dr. Gosse, and were not the result of any intentional acts or omissions by the Firm or me personally. As noted previously, the problems that occurred in this case developed because of the sudden simultaneous departure of several attorneys the Firm's attempt to recover from it, and an overburdened administrative team, as well as the inability to locate a Georgia local counsel despite vigorous attempts to do.

50. I apologize to the Court and to Dr. Gosse, that our efforts to obtain a new local counsel did not begin earlier than they did, but the overwhelming administrative issues caused by the departure of so many lawyers within such a limited period of time resulted in the administrative personnel and remaining attorneys addressing the cases as efficiently as possible.

WHEREFORE, I respectfully request that I not be held in contempt, and further, that the Firm be permitted to promptly return Dr. Gosse's pre-paid expenses in the amount of $15,000.00.

Respectfully submitted,

*Joseph D. Lento*

———————————————
JOSEPH D. LENTO